[No. 3,269.]

## SAMUEL CASSIDY AND DAVID JACKS v. JESSE D. CARR AND LARKIN W. CARR.

APPROVAL OF A MEXICAN GRANT.—If the claimant of a Mexican grant of land which gives a perfect title, presents the same to the Board of Land Commissioners for confirmation, under the Act of Congress of 1851, and it is confirmed and surveyed, and the survey is approved and a patent issued, but by the survey a portion of the land included within the juridical measurement of the Mexican authorities is excluded, the claimant is estopped from afterwards asserting title to the land not included in the survey made by the United States.

APPEAL from the District Court, Third Judicial District, County of Monterey.

August 5, 1834, Josepha Vallejo petitioned Governor Figueroa for a grant of a rancho called "Chualar," within the boundaries of the present county of Monterey. Accompanying the petition was a diseño, and a reference was made to the ayuntamiento of Monterey. A favorable report was made; the priests of the Mission of San Carlos consented to the grant. A reference was then made to the Alcalde, who reported favorably, and a definitive grant was made of the land known by the name of "Chualar," bounded by the ranchos Rincon de Buenna Esperanza, Rio de Monterey, Rancho de Canulo and Sierra de Santa Fe. The grant was then approved by the Departmental Assembly. On the 6th day of September, 1839, the grantee abandoned the grant to Juan Malarin, who petitioned for a renewal of the grant to him. After the usual proceedings, there was a renewal of the grant to Malarin, and an approval by the Departmental Assembly, and juridical possession was given by metes and bounds. There was a map.

accompanying the expediente, and the rancho was described as containing two square leagues, a ltttle more or less. Juan Malarin died prior to April, 1852, and Mariano Malarin was his executor, and on the 2d day of April, 1852, petitioned the Board of United States Land Commissioners, appointed under the Act of 1851, for a confirmation of the grant. The Commissioners confirmed the grant. An appeal was taken by the United States to the District Court for the Southern District of California, and the judgment of the Land Commissioners was affirmed, on the 11th day of January, 1856. On the 5th day of February, 1856, the United States waived the right of appeal. A survey was then made, which was, on the 25th day of March, 1862, returned into the United States District Court, and on the next day exceptions were taken to the survey, and on the 12th day of June, 1865, the survey was confirmed by said Court.

No appeal was taken from the decree confirming the survey. This was an action of ejectment to recover possession of the whole Rancho known as "Chualar." The plaintiffs claimed under Malarin.

The defendants were in possession of three hundred and twenty acres of land in location number four hundred and seventy-seven, of unsurveyed lands, San Francisco Land District, fractional north half of section eight; fractional northwest quarter and fractional northeast quarter of section nine; and southwest half of southwest quarter of section four, in township number sixteen, range number five east, Mount Diablo Meridian. Also, two hundred and eighty acres of land in location number four hundred and seventy-eight, of unsurveyed lands, San Francisco Land District, southeast quarter of southwest quarter, fractional southeast quarter and fractional east half of northeast quarter of section four. Also fractional northwest quarter of section three, in township number sixteen, range number five east, Mount Diablo Meridian. The land of which the defendants were in possession was within the exterior boundaries of the grant made to Malarin by the Mexican nation, but outside of the exterior boundaries of the grant as confirmed and surveyed by the United States.

The defendants claimed title to the land of which they were in possession, under certificates of purchase issued to them by the State of California, under an Act of the Legislature, approved April 23, 1858, entitled, "An Act to provide for the location and sale of the unsold portion of the five hundred thousand acres of land donated to this State for school purposes, and the seventy-two sections donated to this State for the use of a seminary of learning."

The Court below rendered judgment in favor of the plaintiffs, and, on application of the defendants, granted a new trial. The plaintiffs appealed from the order granting a new trial.

*W. H. Patterson*, for the Appellant.

The only question presented to the Court is, can the United States cut down a Mexican grant of a specific tract by metes and bounds, approved by the Departmental Assembly, of which juridical possession is given? Such power is claimed to rest upon the Act of Congress, providing for the survey of private land claims, and the legislation subsequent thereto.

By the confirmation, the claim was saved from forfeiture. And to maintain that a part of the tract can be cut off is practically to maintain that notwithstanding the treaty with Mexico, the United States had absolute power to confiscate all or some portion of the property which that compact guaranteed should be protected. *Minturn* v. *Brower*, 24 Cal. 644, is opposed to any such doctrine.

The grant in question was not inchoate, but was a perfect and complete title. (23 How. 498, Yontz case; *Steinbach* v. *Moore*, 30 Cal. 508.)

The eighth article of the Treaty operated immediately upon this grant, "retaining the property which they possess in the said territory," etc,, and Justice CURRY said of it: "That it was intended by the treaty that Mexicans then established in California, and having property therein, should retain and enjoy it, or dispose of it, as to them might seem proper, the language of the treaty places beyond controversy." (See also *U. S.* v. *Wiggins*, 14 Pet. 349; quoted 24 Cal. 662; 5 Wallace, 834.

*Wm. Matthews*, for Respondent.

Assuming, firstly, the grant to Malarin, upon which the plaintiff counts, to be perfect, the question of the power of Congress to compel him to submit his title to the Commission does not arise in the present case, for the claimant presented his grant for adjudication; and having elected to do so, is bound by the result of the litigation which he has initiated.

In *Minturn* v. *Brower*, (24 Cal. p. 664), the Court say:

"That the citizen of the Mexican Republic who was seized in fee simple absolute of lands in California at the date of treaty, and who thereafter elected, according to its provisions, to become a citizen of the United States, could, if he choose to do·so, have submitted his title and claim to such lands to be passed upon by the Commissioners and the proper Courts, under the Act of 1851, we have no doubt. * * *"

The constitutionality of the Act of March 3d, 1851, is therefore not involved in the present case.

Mr. Matthews relied upon the opinion of the Hon. LO-RENZO SAWYER, Judge of the Circuit Court of the United States for the Ninth Judicial Circuit, District of California, in the case of *Boyle* v. *Hinds*.

The following is the opinion:

The Mexican Government, in 1839, granted a rancho called "Estero Americano," to Edward Manuel McIntosh. The grant was for two square leagues, within certain designated boundaries embracing six or more square leagues. It contained the usual provisions for measuring the land, and leaving the-surplus to the nation. The grant was approved by the Department Assembly. Afterwards, juridical possession was given by J. P. Leese, as first Alcalde of the jurisdiction within which the land granted was situated. The juridical possession, so far as I am informed as to the requirements of that ceremony prescribed by the laws then in force on the subject, is in all respects regular and in due form. The juridical possession, instead of be-

ing limited to two, embraces at least six square leagues. Prior to 1850, McIntosh conveyed his grant to Jasper O'Farrell, who, in 1852, presented the grant for confirmation; and it was subsequently confirmed to the extent of two leagues only, surveyed and patented—the patent covering about two leagues. O'Farrell took his patent without objection, and placed it on record in the Recorder's Office of Sonoma County. The land in question lies within the juridical possession given to McIntosh, but without the limits of the final survey and the patent issued to O'Farrell. Whatever title O'Farrell had under the grant has, since the commencement of proceedings for confirmation, passed to the plaintiff by proper conveyances. After the issue of the said patent to O'Farrell, in pursuance of the decree of confirmation, the United States issued in due form to the defendant Hinds, as a preëmptioner, a patent to the land in controversy; and he was in possession at the commencement of this action, claiming title under said patent.

The plaintiff claims that McIntosh had a perfect Mexican title, and that it was unnecessary for his grantee, O'Farrell, to present his claim for confirmation; that, his title being perfect, Congress had no constitutional power to deprive him of his land in case of his failure to present his claim under the Act of 1851. *Minturn* v. *Brower*, 24 Cal. 644, is relied on as authority for this position. Under the view I take, it may be conceded that it was unnecessary to present the claim; but the claimant did present his grant, and submit it to examination, and asked its confirmation under the Act of Congress. The questions as to the genuineness and extent of the grant were litigated between the government and the claimant before a tribunal having jurisdiction to determine them. The grant was confirmed to the extent of two square leagues, and no more. The juridical possession was put in evidence, and the extent of the land to which the claimant was entitled in fact, determined. The claimant did not appeal, and the determination became final. He had a right of appeal under the Act, and could have gone from Court to Court, and ultimately had the question directly adjudicated by the Supreme Court of the United

States in that proceeding, whether he had a title to the full extent of the juridical possession or not. The same Courts would then have passed upon his title in a direct proceeding to establish his claim to the whole, that are now called upon to determine the same question collaterally. The law afforded him tribunals to determine this very question between him and the United States. The very object of the law was to definitively ascertain what land belonged to Mexican grantees and what to the United States, in order that the United States might dispose of that which it owned to other parties. The owner of the grant availed himself of the right afforded by the Act of Congress, and the question between him and the United States was litigated and determined. If he had appealed to the Supreme Court in that proceeding — a direct proceeding to determine the validity and extent of the grant, the amount of land to which he was entitled under his perfect grant, if it be such —and the Supreme Court had determined that he must be limited to two leagues, I apprehend that the same question could not be litigated over again collaterally in the same or other Courts. The same questions now raised could just as well have been presented then as now. The Land Commission and the Courts on Appeal had jurisdiction to determine them. They were embraced within the issues, and actually litigated and determined. The fact that the claimant did not appeal cannot affect the question. If he chose to accept the decision of the inferior tribunal, he is bound by it. (*Gray* v. *Dougherty*, 25 Cal. 266; *Garwood* v. *Garwood*, 29 Cal. 515.) Besides, the fifteenth section of the Act of 1851, makes the adjudication final between the government and the claimant, and it must be regarded as *res adjudicata*. The proceedings ending in a decree limiting the confirmee to two leagues are clearly judicial. The survey and patent but carry out the decree of confirmation. The patent is the final authentic record of the proceeding, and is conclusive evidence between the parties of the extent of the grant and the correctness of the location.

This appears to me to be the result upon authority, as well as upon principle, where the claimant under a Spanish

grant, whatever the character of the grant may be, has presented his claim, litigated it with the government in the tribunals provided for the purpose, and had the genuineness and extent of the grant determined. The following authorities lead to this conclusion: *Leese* v. *Clark*, 20 Cal. 423; 18 Id. 571; *Teschemacher* v. *Thompson*, 18 Cal. 26; *Board* v. *Federy*, 3 Wall. 491–2; *Rodrigues* v. *U. S.* 1 Wall. 591; *Treadway* v. *Semple*, 28 Cal. 655.

Judgment must be rendered for defendant with costs, and it is so ordered.

Delivered February 2, 1874.

By the Court, McKINSTRY, J.:

The plaintiff seeks to recover as assignee of a claim derived from the Mexican government. The claim was confirmed by the Land Commissioners and by the District Court; and the appeal to the Supreme Court of the United States was afterward dismissed. The survey of the Surveyor-General was returned to the District Court, and the claimant, having filed his exceptions to it, and the same having been argued, the survey as returned was approved by that Court and made final. By the approved survey the lands—the possession of which is sought to be recovered in this action, and which were included within the juridical measurement of the Mexican authorities—were excluded.

It may be assumed, as is asserted by plaintiff, that the *expediente* shows a "perfect title." Yet the claimant, who submitted his claim for confirmation or rejection, and to proceedings the object of which was to segregate lands granted by Mexico from the public domain of the United States, could not, nor can his grantee now be heard to assert title to any lands not included in the final survey.

Order affirmed.