## UNITED LAND ASSOCIATION et al. v. KNIGHT.*

### No. 12,748; January 2, 1890.

#### 23 Pac. 267.

**Public Lands—Patents—Authority of Land Office.**—Act of Congress of 1864, section 7 (13 U. S. Stats. at Large, 334), provides that "it shall be the duty of the surveyor general of California, in making surveys of private land claims finally confirmed, to follow the decree of confirmation as closely as practicable, whenever such decree designates the specific boundaries of the claim; but when such decree designates only the outboundaries within which the quantity confirmed is to be taken, the location shall be made as near as practicable in one tract, and in a compact form, . . . . and it shall be the duty of the commissioner of the general land office to require a substantial compliance with the directions of this section before approving any plat and survey forwarded to him." Act of Congress of 1851, section 13 (9 U. S. Stats. at Large, 631), provides that "the patent shall issue to the claimant on his presenting to the general land office an authentic certificate of confirmation, and a plat or survey of said land duly certified and approved by the surveyor general, whose duty it shall be to cause all private land claims which shall be finally confirmed to be accurately surveyed and furnish plats of the same." The decree confirming defendant's land claim described the land as "a tract situated within the county of San Francisco, and embracing so much of the extreme upper portion of the peninsula above ordinary high-water mark, . . . . on which the city of San Francisco is situated, as will contain an area of four square leagues. Said tract being bounded on the north and east by the bay of San Francisco, on the west by the Pacific ocean, and on the south by a due east and west line drawn so as to include the area aforesaid." The survey made under this decree included by metes and bounds land below the line of ordinary high tide. The patent following the survey described the lands by metes and bounds, but recited the decree of confirmation. Held, in ejectment for the lands below high tide, that the north, east, and west boundary lines given in the decree and recited in the patent would prevail over those given in the survey and the granting clause of the patent, as there was no power by which land could be included in the survey and patent, the claim to which had not been confirmed by the decree.

**Ejectment—Attack upon Patent.**—In an Action of Ejectment, plaintiff can attack the patent from the United States, under which defendant claims, on the ground that the land office had no power to issue a patent for the lands embraced therein.

*For subsequent opinion in bank, see 85 Cal. 448.

APPEAL from Superior Court, City and County of San Francisco. J. V. Coffey, Judge.

Ejectment by the United Land Association and others against Knight. Judgment for plaintiffs, and defendant appeals.

E. F. Preston and James A. Waymire for appellant; Doyle, Golpin & Scripture for respondents.

PATERSON, J.—This is an action of ejectment to recover a block of land lying below ordinary high tide in the city and county of San Francisco, and being a portion of that part of San Francisco known as "Mission creek lands." The defendant claims under a patent of the United States to the city, issued June 20, 1884, in satisfaction of a pueblo grant of four square leagues, which was confirmed by the decree of the United States circuit court, May 18, 1865. The tract confirmed by this decree is described as "a tract situated within the county of San Francisco and embracing so much of the extreme upper portion of the peninsula above ordinary high-water mark (as the same existed at the date of the conquest of the country, viz., 7th of July, 1846), on which the city of San Francisco is situated, as will contain an area of four square leagues; said tract being bounded on the north and east by the bay of San Francisco, on the west by the Pacific ocean, and on the south by a due east and west line drawn so as to include the area aforesaid"—subject, however, to certain deductions for lands previously reserved or dedicated to public use by the United States. Under the decree referred to, a survey was made, and on August 13, 1868, was approved by the United States surveyor general for the state of California, which fixed the southern boundary of the land by following the high-water mark; thus excluding the lands of Mission creek, of which the land in suit is a part. Subsequently, in 1884, the Secretary of the Interior caused another survey to be made, one line of which ran directly across the mouth of Mission creek; thus including the lands of Mission creek as a part of the grant to the city. The patent to the city recites the decree confirming the grant. Plaintiffs' claim of title is based upon a deed from the tide land commissioner

to Ellis, dated November 24, 1875, and subsequent conveyances to them. They contend that the state, upon its admission into the Union, by virtue of its sovereignty, became seised of the land, it being tide land. This right of the state, they claim, is recognized by the decree confirming the grant to the city. It is claimed that the patent is bound to follow the decree in fixing the boundary at high-water mark, and that so much of the patent as attempts to convey lands below high-water mark is void because in excess of the authority of the officials issuing the patent.

Appellant contends that a party in an ejectment suit cannot question the validity of a United States patent for land upon the ground that it does not follow the decree confirming the grant; that the patent from the United States government to the city and county of San Francisco for the pueblo lands confirmed to it under the acts of Congress of March 3, 1851, and of July 1, 1864, by the decree of the United States circuit court, which patent conforms in its description of the lands granted to the final survey, made, as provided in the latter act, in accordance with the instructions of the commissioner of the general land office, is conclusive evidence, as against the state of California and its grantees, of the right of the city and county to all the lands embraced within the exterior limits of the survey, including tide lands lying below the line of ordinary high tide. It is said that the question is no longer an open one in this state. The case of People v. City and County of San Francisco, 75 Cal. 388, 17 Pac. 522, is cited and relied on in support of this contention. It did not appear in People v. City, etc., whether the decree of confirmation was made a part of the patent. In this case it is shown that the patent contains full recitals of the decree, and shows upon its face that the tract confirmed embraced "so much of the extreme upper portion of the peninsula above ordinary high-water mark (as the same existed at the date of the conquest of the country, viz., 7th of July, 1846), on which the city of San Francisco is situated, as will contain an area of four square leagues," etc. It shows that three sides of the tract are bounded by natural monuments, namely, "on the north and east by the bay of San Francisco, on the west by the Pacific ocean, and on the south by a due east and west line drawn so as to include the area aforesaid." If it be con-

ceded, however, that.the decision referred to covers the questions involved as fully as is claimed by the appellant, we feel satisfied that the supreme court of the United States would not follow it in this case or any other, involving the same questions, which might go to that court on a writ of error. "It has always been the practice here to adopt that view of a legal question which has been taken by the supreme court of the United States, when the question is within the branch of the jurisdiction of that court which may be exercised by writ of error to this court." As the question is a federal question, it is one which will be decided ultimately by the supreme court of the United States: Belcher v. Chambers, 53 Cal. 635.

The question involved in this case is whether the officers of the land department had power to patent land outside of the natural boundaries given in the decree of confirmation. If the land department had no jurisdiction to act, if any portion of the land described in the patent was not a part of the public domain, or if there was no legislation authorizing its conveyance by the land department, then, under the decisions of the United States supreme court in Doolan v. Carr, 125 U. S. 618, 31 L. Ed. 844, 8 Sup. Ct. Rep. 1228, and other cases therein cited, the patent is inoperative to pass the title; and objection can be taken to it on these grounds at any time, and in any form of action.

Upon her admission into the Union, the state of California became the owner, by virtue of her sovereignty, of all tidewater lands within her borders lying below high-water mark, except such as had been disposed of by the Mexican government prior to the treaty of Guadalupe Hidalgo. The territory acquired from Mexico was by the express terms of that treaty taken by the United States subject to the trust of protecting all legal and equitable interests of prior grantees under the former sovereign. The state, of course, could not take more than the United States received; and the claim of the state, by virtue of her admission and her sovereignty, was subordinate to such prior equities, and subject to the power of the federal government to confirm prior Mexican grants, and to locate grants of specific quantities of land within the exterior boundaries of larger tracts: Lux v. Haggin, 69 Cal. 255, 4 Pac. 919, 10 Pac. 674. The United States government has

exercised the power vested in it, and has, through its courts and the officers of its land department, attempted to define the boundaries of the four leagues of land to which the city of San Francisco, as successor in interest of the pueblo of San Francisco, a Mexican citizen, was entitled. The court, having jurisdiction to hear and determine the right of this claimant finally confirmed its claim to four square leagues of land in the extreme end of the peninsula, giving, as the boundaries thereof on the west, the north, and the east, the natural lines of high-water mark, leaving the southern boundary to be fixed by the surveyor on such a line as would include, between it and the high-water lines north of it, said four square leagues of land. This, it seems, the surveyor did not do; but, ignoring the natural boundaries fixed by the court in its decree for the west, north and east, ran his line below the line of high tide, and across the mouth of Mission creek, and included within his description the lands described in the complaint—lands of the state not included within the decree of confirmation. Following the survey, the patent describes the land by metes and bounds.

The government of the United States is in duty bound to carry into effect the stipulations contained in the treaty of Guadalupe Hidalgo; but the power to do so must be exercised in the manner provided by Congress; and it would seem that when Congress vested in the federal courts the power to determine the rights of Mexican claimants, and provided (section 7) that in making the survey the surveyor general should "follow the decree of confirmation as closely as practicable, whenever such decree designates the specific boundaries," and that "it shall be the duty of the commissioner of the general land office to require a substantial compliance with the directions of the section before approving any survey and plat forwarded to him," that the officers of the land department are, as to such lands, merely auxiliary to the court, with special and limited jurisdiction to carry out its decrees. Section 13 of the act of 1851 (9 U. S. Stats. 631) provides that "the patent shall issue to the claimant upon his presenting to the general land office an authentic certificate of confirmation, and a plat or survey of said land, duly certified and approved by the surveyor general, whose duty it shall be to cause all private land claims which shall be finally confirmed to be ac-

curately surveyed, and to furnish plats of the same; and in the location of said claims the said surveyor general shall have the same power and authority as are conferred on the register of the land office by section 6 of the act to create the office of surveyor of the public lands of the state of Louisiana, approved March 3, 1831." Under this provision, we think it clear that the power of the surveyor general is restricted to the claim as finally confirmed. It has been decided in several cases, on appeal from decrees of confirmation, that the description must be followed; that "the decree is a finality, not only on the question of title, but as to the boundaries which it specifies": United States v. Halleck, 1 Wall. 455, 17 L. Ed. 668; the Fossat Case, 2 Wall. 649, 17 L. Ed. 739; Higueras v. United States, 5 Wall. 829; Van Reynegan v. Bolton, 95 U. S. 35, 24 L. Ed. 352. In Higueras v. United States the court declared that "confirmation must precede the survey which is made subject to such an order; and, if the decree of confirmation is so indefinite and incongruous that it cannot be executed, then it is void, and of no effect, and the claim to the land stands upon the same footing, in legal contemplation as a claim which was never presented to the commissioners for adjudication." In the Fossat case the court held that it was not competent for the district court to depart from its own decree in the exercise of the power conferred by the act of June 14, 1860; that the court was bound to execute the decree by fixing the lines on the grant in conformity with the provisions of the decree, the decree being not only the foundation of the validity of the grant, but of the proceedings in the survey and location of the land confirmed. In that case, as in this, the decree provided for specific boundaries on three sides of the tract, and left one side to be surveyed. If the court, which then had the power to supervise and confirm or reject the survey as the land department now does, could not alter or depart from the specific boundaries given in its own decree, how can the officers of the land department?

These cases, to be sure, were direct appeals to the supreme court of the United States; but they bear directly upon the question of the authority of the officers of the land department to patent lands outside of the boundaries of the decree of confirmation, and that is the question here. If the land

granted is not within the power of the officer, the grant or patent is invalid. In Polk v. Wendal, 9 Cranch, 87, 3 L. Ed. 665, Chief Justice Marshall said: ''There are cases in which a grant is absolutely void, as where the state had no title to the thing granted, or where the officer had no authority to issue the grant.'' In New Orleans v. United States, 10 Pet. 662, 731, 9 L. Ed. 573, the court said: ''It would be a dangerous doctrine to consider the issuing of a grant as conclusive evidence of right in the power which issued it. On its face, it is conclusive, and cannot be controverted; but if the thing granted was not in the grantor no right passes to the grantee.'' So in this case, unless Congress has given the land department power to dispose of land belonging to the state of California—lands lying outside of the boundaries of the decree— a patent to land shown to be outside of such decree is invalid. In Wright v. Roseberry, 121 U. S. 488, 30 L. Ed. 1039, 7 Sup. Ct. Rep. 985, it appeared that land which had been previously granted to the state by the swamp land act was held by the defendant under a patent from the United States issued on a pre-emption claim. The court held the patent to be invalid as a conveyance, because the land was not, at the time it was patented to the defendant, within the granting power of the land office. The state of California took the lands in controversy, in 1850, as effectually as if she had received them by grant from Congress. If the land department had the power to determine that land outside of the decree of confirmation should be conveyed, it would necessarily have the power to pass on its own right to convey the land, but the decree of confirmation was the foundation of the power to make the patent. It precedes and limits the power of the officers of the land department. If the latter are not limited by the decree, then the court may confirm a tract in one place, and the officers locate it in another, and the patent which attempts to convey the latter tract controls the former. This cannot be, for the whole power of deciding what shall be granted in pursuance of the treaty is intrusted to the judicial department. Section 7 of the act of 1864 (13 U. S. Stats., p. 334) shows that the power of the land department is limited by the provisions of the decree: ''It shall be the duty of the surveyor general of California, in making surveys of private land claims finally confirmed, to follow the decree of con-

firmation as closely as practicable whenever such decree designates the specific boundaries of the claim; but, when such decree designates only the outboundaries within which the quantity confirmed is to be taken, the location shall be made, as near as practicable, in one tract, and in a compact form, . . . . and it shall be the duty of the commissioner of the general land office to require a substantial compliance with the directions of this section before approving any survey and plat forwarded to him.'' Here is an emphatic declaration by Congress that the decree is the limit of the power of the land department, and shows very clearly, we think, that Congress has not given to the officers of the land department the exclusive and final power of determining whether any land is within or without the location of the decree, or of locating grants in places where the courts have not located them. If such power is not conferred upon the land department, any attempt to convey land outside of the permanent boundaries named in the decree is not an error of judgment simply, but is an act void for want of jurisdiction.

Under the laws of Mexico existing at the time of the treaty, lands below and within one hundred and ninety varas of the seashore could not be held in private ownership (Wheeler, Land Titles, 13); and the land officers of the United States could not, in the absence of a judicial adjudication that such land belonged to a Mexican claimant, convey to him. ''All that place is called 'sea beach' which is covered by the waters of the sea when at its highest point during all the year'': Hall Mex. Law, 448. The king could not alienate such lands: New Orleans v. United States, 10 Pet. 726, 9 L. Ed. 598; Milne v. Girodeau, 12 La. 324. The shore of the sea is that part of the land covered by water in its greatest ordinary flux, the ports, bays, roadsteads and gulfs, and the rivers, although they may not be navigable (Mission creek is navigable), their beds, mouths, and the salt marshes: Hall, Mex. Law, 448–503; Civ. Code Mex., art. 802.

A patent cannot be issued by the land department to a person not named in the decree, because the courts, and not the department, are given the power to determine the person to whom the lands were granted by Mexico. If the judgment of the court should decree that the grant is a forgery, and therefore void, and the land department should patent the land

claimed, the action of the department would be shown to be
void upon the production of the decree, because Congress has
given to the courts jurisdiction to determine the validity or
invalidity of the claim.   Of course, in cases where the court,
by its decree, has established the validity of the grant, and
a tract of a certain number of acres has been confirmed to be
located within the exterior limits of a larger tract, it is left
to the officers of the land department, in their discretion, to
locate and survey the requisite number of acres within the
larger tract; and their action in execution of the decree is
not subject to attack in any collateral proceedings, because
it is within their jurisdiction, and in pursuance of the decree.
In such cases there cannot possibly be any conflict between
their action and the directions of the decree.   It is auxiliary
to the decree, and as conclusive as the decree itself.   Unless
we bear in mind the distinction between cases of this kind—
the confirmation of a certain number of acres to be located
within the exterior boundaries of a larger tract, and desig-
nated by the supreme court of the United States as ''floats''—
and cases in which the boundaries or some of them are defi-
nitely fixed by the decree, the decisions upon the subject will
appear to be very conflicting.   An examination of the authori-
ties cited at the argument of this case and the argument of
People v. City and County of San Francisco, with this dis-
tinction in view, will illustrate the principle stated and ex-
plain what would otherwise seem to be a conflict of decisions
on the subject.   In Moore v. Wilkinson, 13 Cal. 478, relied on
by parties claiming under the patent from the United States,
the court regarded the grant ''as conveying an interest to four
leagues lying within a larger tract'': Page 486.

It is true the patents, in some cases, seem to have gone
beyond the boundaries of the diseno, and yet they were held
not to be void; but it was so held in each case because the par-
ties attacking the patent had no title to land lying outside
of the exterior boundaries, and were not, therefore, in a posi-
tion to attack the validity of the patent.   In Doolan v. Carr,
the court held (only Waite, C. J., dissenting) that one who
had not even connected himself with the paramount source
of title might question the validity of the patent: 125 U. S.
618, 31 L. Ed. 844, 8 Sup. Ct. Rep. 1228.   In Ward v. Mul-
ford, 32 Cal. 369, the district court, as it had the right to do

under the law then applicable to its decrees, had reviewed the survey, and confirmed it. Even if its action were irregular, it was not void. But at the time the grant before us in this case was confirmed the surveyor was not required to report his action to the court for confirmation, and no report was made.

In Chipley v. Farris, 45 Cal. 539, the patent covered only a portion of the tract described in the decree, but not the land in controversy. Plaintiff had no legal title, because no patent had been issued to him under the decree. The question as to the power of the land department to patent lands outside of the boundaries of the decree was not involved. Within the boundaries of the decree it may act. Without the boundaries it has no jurisdiction. Furthermore, in that case the descriptions were both by metes and bounds, and it is expressly admitted by respondent in that case, in his written points, that if the side lines of the tract in controversy were the seashore a different rule would apply. In Teschemacher v. Thompson, 18 Cal. 11, 79 Am. Dec. 151, the court assumed that the grant was of "a specific quantity lying in an area of larger extent": Page 24. In Cassidy v. Carr, 48 Cal. 339, there was no conflict between the decree and the patent. The survey and patent, as the court said, simply carried out the decree, and were conclusive between the parties. Of course, where "the survey and patent but carry out the decree," the patent is conclusive between the parties. In none of the cases cited is the question of the power of the officer to issue a patent for land not embraced in the decree considered. It does not follow logically that because the patent is conclusive in all cases where the land department had jurisdiction, it is conclusive as to all lands lying without the boundaries of the decree, as well as within them. The surveyor cannot incorporate into the decree lands not confirmed, nor can he shift on the surface of the earth the natural boundaries—mountains, bays or oceans. The presumption always is, doubtless, that the metes and bounds follow the decree; but to hold that the positions of the natural monuments are indisputably fixed by the courses and distances of the surveyor, and approval of the land officers, would be placing a construction upon the acts of Congress never intended by that body, and not warranted by the decisions of the national courts. The land de-

partment has power to do what the court cannot do, viz., locate, survey, and patent tracts of land designated by the court within larger areas; and when a rancho is confirmed by name to fix its boundaries, but when the court itself, in its decree, fixes one or more of the boundary lines, the department has no jurisdiction to go beyond it. The distinction between the different kinds of grants is clearly and fully stated in United States v. McLaughlin, 127 U. S. 428, 32 L. Ed. 213, 8 Sup. Ct. Rep. 1177, and in United States v. Curtner, 38 Fed. 1. In Doolan v. Carr, supra, the court said: "There is no question as to the principle that, where the officers of the government have issued a patent, in due form of law, which on its face is sufficient to convey the title to the land described in it, such patent is to be treated as valid in actions at law, as distinguished from suits in equity, subject, however, at all times, to the inquiry whether such officers had the lawful authority to make a conveyance of the title. But if those officers acted without authority; if the land which they purported to convey had never been within their control, or had been withdrawn from that control at the time they undertook to exercise such authority—then their act was void —void for want of power in them to act on the subject matter of the patent, not merely voidable. In which latter case, if the circumstances justified such a decree, a direct proceeding, with proper averments and evidence, would be required to establish that it was voidable, and should therefore be avoided. The distinction is a manifest one, although the circumstances that enter into it are not always easily defined. It is, nevertheless, a clear distinction, established by law, and it has been often asserted in this court that even a patent from the government of the United States, issued with all the forms of law, may be shown to be void by extrinsic evidence, if it be such evidence as by its nature is capable of showing a want of authority for its issue." Under this and other decisions, including many decisions of this court (McLaughlin v. Powell, 50 Cal. 64; McLaughlin v. Heid, 63 Cal. 208; Southern Pac. R. R. Co. v. McCusker, 67 Cal. 67, 7 Pac. 122; Chicago etc. Mining Co. v. Oliver, 75 Cal. 194, 7 Am. St. Rep. 143, 16 Pac. 780, quoted approvingly in Wright v. Roseberry, supra), the evidence offered and admitted was competent, relevant and material, and fully established the findings of the court. The

deeds to Ellis, and evidence of the location on the earth's surface of the line of high tide, were properly admitted.

Now, if it be true, as a matter of law, that the surveyor general had no power to include in a survey any land, the claim to which was not confirmed by the decree of the circuit court, and that neither the commissioner of the land office nor the Secretary of the Interior had any power to direct or approve such a survey, the only question is, Which of the west, north, and east boundary lines, respectively shall prevail—those given in the decree, and recited in the patent, or those given in the survey, and employed in the granting clause of the patent? In determining this question, there is no violation of the principles which forbid a collateral attack upon such instruments. There is no such attack. It becomes simply a question of construction. Both descriptions are upon the face of the patent, and the case is one in which the plaintiffs claim that the defendant's title depends upon a deed describing the property by natural boundaries, and also by metes and bounds; that the description by metes and bounds includes land not included within the natural boundaries, and which defendant claims to own, but which is in fact owned by plaintiffs; that their title should be quieted because the natural and permanent boundary lines should prevail over the description by metes and bounds. A determination of this question will in no way affect the location of the south line. By the decree, the surveyor was to fix that line; but, if the surveyor had run his line through the bay of San Francisco, and taken in lands of the state lying below the high-water mark on the eastern shore of the bay, or lands lying in the foothills of the county of Contra Costa, would it be contended that the patent, although reciting the decree confirming four leagues on the peninsula of San Francisco, with the bay of San Francisco as the eastern line thereof, is conclusive evidence, as against the state or its grantees, of the right of the city and county of San Francisco "to all the lands embraced within the exterior limits of the survey, including tide land lying below the line of ordinary high tide," and in fact conclusive against everybody as to all lands included in the survey, wherever located? If the plaintiff, in the case supposed, would not be prevented from showing that the metes and bounds included land belonging to him, not confirmed by

the decree, and which the land officers could not convey, why may he not show the same thing in this or any other kindred case? In More v. Massini, 37 Cal. 432, the court said: "The call for the seashore as to the southern boundary must be regarded as the more definite and certain, and will prevail over a call for a mere station and over the courses and distances."

But, whether we consider it as a collateral attack, or a mere matter of construction, it is clear, we think, that, under the decisions of the supreme court of the United States in Doolan v. Carr, supra, and other cases there cited, "want of power in an officer of the land office to issue a land patent may be shown in an action at law by extrinsic evidence, although the patent has been issued with all the forms of law required for a patent of public land." There were no errors in the rulings of the court. The evidence shows beyond doubt that the land in controversy is outside of the natural boundaries of the decree. The judgment is therefore affirmed.

We concur: Works, J.; Fox, J.; Sharpstein, J.

THORNTON, J.—I concur in the judgment, and will file an opinion hereafter.

I dissent: McFarland, J.