## UNITED STATES *v.* HANCOCK.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 688. Submitted January 8, 1890. — Decided January 27, 1890.

When a decree in equity in a suit relating to public land gives the boundaries of the tract, the claim to which is confirmed, with precision, and has become final by stipulation of the United States and the withdrawal of their appeal therefrom, it is conclusive, not only on the question of title, but also as to the boundaries which it specifies.

Proof that a surveyor of public land, who in the course of his official duty surveyed a tract which had been confirmed under a Mexican land-grant, accepted from the grantee some years after the survey a deed of a portion of the tract, which he subsequently sold for $1500, though it may be the subject of criticism, is not the "clear, convincing and unambiguous" proof of fraud which is required to set aside a patent of public land.

Doubts respecting the correctness of a survey of public land, which was made in good faith and passed unchallenged for fifteen years, should be resolved in favor of the title as patented.

THIS was a bill filed to set aside a patent. The facts were these:

In 1843 Michael White petitioned for a tract of land at the mouth of the Cajon de los Mejicanos. This petition was sustained and a grant made by Governor Manuel Micheltorena, the Mexican governor of the Californias, which read:

"Whereas Don Michael White, a Mexican by naturalization, has petitioned for his own benefit and that of his family for the place known by the name of 'Muscupiabe,' bounded on the north by the foot of the mountain, on the south by Agua Caliente, and on the west by the 'Alisos,' (sycamores,) which are on the other side of the creek called 'De los Negros,' having practised the proceedings and relative observation, according to the direction of the laws and regulations; exer-

cising the authority conferred upon me in the name of the Mexican nation, I, have concluded to grant him the aforesaid land, declaring it to be his property, by the present letters, subject to the approval of the most excellent departmental assembly, in and under the following conditions.

*     *     *     *     *

" 3d. The land of which grant is hereby made consists of one league, (*un sitio de ganado mayor*,) a little more or less, according to the explanation of the diagram which is attached to the respective 'expediente.'

"The judge that shall give the possession shall cause it to be measured in conformity with the ordinance, reserving the overplus that may result to the nation for convenient uses."

On February 8, 1853, a petition for confirmation was presented in the name of the original grantee to the board of commissioners appointed to ascertain and settle private land claims, and on March 6, 1855, the grant was confirmed by an order in these words :

"In this case, on hearing the proofs and allegations, it is adjudged by the commission that the claim of the petitioner is valid, and it is therefore decreed that his application for a confirmation be allowed, with the following boundaries, to wit : On north and east by the foot of the mountains, on the south by the Agua Caliente, and on the west by the cottonwoods, which are on the other side of the creek, reference being had to the map accompanying the expediente."

An appeal was taken from this order of confirmation, but was dismissed on June 8, 1857. This confirmation was not challenged.

In 1867 instructions were issued by the surveyor general of California for the survey ; and the survey as made and returned to the surveyor general's office was by him approved, and, on July 11, 1868, forwarded to Washington. This survey in January, 1871, was disapproved by the Secretary of the Interior as not conforming to the decree of confirmation, and a new survey ordered. On June 10, 1872, the surveyor general reported that he had examined the original title papers and had compared them with the calls of the decree of confir-

mation, and had caused an examination to be made of the premises, and that therefrom he found that a survey made in strict accordance with the boundary calls of the decree of confirmation would include something like a league more of land than the present survey, and that the owners of the grant were satisfied with the present survey, and therefore suggested the propriety of accepting it. This report was returned to the Secretary of the Interior, by him approved, and, on June 22, 1872, the patent was issued. This bill was filed on May 29, 1885. The bill charged that the surveyor, Henry Hancock, who made the survey was the real owner of a large interest in the grant, although the title was nominally in another party; that concealing his interest he secured his appointment as deputy surveyor, and in making the survey fraudulently included within its limits about twenty-six thousand acres more of land than justly belonged therein; that without any knowledge of the fraudulent acts of Hancock in the premises the surveyor general thereafter published the required notice of the survey in a newspaper published in the city of Los Angeles, a city of another county and over fifty miles from the land; whereas, at the time, there was a newspaper published within the county and within two miles of the land. It also charged that after the survey had been disapproved by the Secretary of the Interior, Hancock fraudulently represented to the surveyor general that a correct survey would include about one league in addition to what was embraced within the present survey; but that the owners were content to take the survey as it stood; and that, induced by and relying upon these fraudulent representations, the surveyor general made the report and recommendation heretofore mentioned. The Circuit Court, on final hearing, dismissed the bill, and the United States appealed to this court.

*Mr. Assistant Attorney General Maury,* for appellant.

*Mr. A. T. Britton* and *Mr. A. B. Browne,* for appellees.

Mr. Justice Brewer, after stating the case as above, delivered the opinion of the court.

It is obvious that the confirmation was of a tract with specified boundaries, and as such covered all the land within those boundaries, irrespective of quantity, and this, notwithstanding there appeared in the prior proceedings statements that the tract contained a certain amount, "a little more or less," which amount was very much less than that included within the boundaries. "When a decree gives the boundaries of the tract to which the claim is confirmed, with precision, and has become final by stipulation of the United States and the withdrawal of their appeal therefrom, it is conclusive, not only on the question of title, but also as to the boundaries which it specifies." *United States* v. *Halleck*, 1 Wall. 439; *United States* v. *Billing*, 2 Wall. 444; *Higueras* v. *United States*, 5 Wall. 827. And the act of Congress of July 1, 1864, 13 Stat. 334, § 7, requires the surveyor general, "in making surveys of the private land claims finally confirmed, to follow the decree of confirmation as closely as practicable whenever such decree designates the specific boundaries of the claim."

The charge of fraudulent misconduct on the part of the surveyor, Hancock, is not substantiated. Mr. Hancock was not appointed surveyor with reference to this survey. He was the regular deputy surveyor for this district, having been appointed more than ten years prior thereto. While at one time he had owned an interest in the grant, he had more than eight years before the survey sold and conveyed it for a full consideration to his brother, and from that time forward, during all these proceedings, was without any interest in the premises. It is true that during these years Mr. Hancock acted as the general agent of his brother, and that is all the ground there is to suspect wrong on his part. There is not a syllable of testimony that, after the Secretary had ordered the new survey, Mr. Hancock had anything to do with the matter, either in suggestion, recommendation or otherwise, so that the report of the surveyor general was not made by virtue of anything that Hancock had said or done. The examination referred to by the surveyor general in his report was made by one R. C. Hopkins, under the direction of the surveyor general, a person who was at the time, so far as the testimony discloses, entirely disinterested.

It is true there is testimony furnished by Mr. Hopkins himself that some time after the patent had been issued he accepted a deed of a portion of this grant as a present from the owners — a tract which he subsequently sold for $1500. Whatever criticism may be placed upon the acceptance of this gift — a gift made long after his relations to the survey had ceased — it certainly does not establish dereliction in his discharge of prior official duty.

These matters, together with the failure to publish notice in the nearest paper, are all the evidences of fraud in the transaction. Not only are they not "the clear, convincing and unambiguous" proofs of fraud required to set aside a patent, as declared by this court in the case of *Colorado Coal Company* v. *United States*, 123 U. S. 307, 317, but they, all combined, create nothing more than a suspicion. They may leave a doubt, but they do not bring the assurance of certain wrong.

Some question is made as to the correctness of the survey, and that turns as a question of fact upon what is meant by the expression ".Agua Caliente" in the various descriptions. If it means a stream known as Agua Caliente, then the government has no cause to challenge the survey, for it includes less than was really confirmed, but if it means a district of country known by that name in the northwestern portion of the San Bernardino rancho, a neighboring tract, then the survey was excessive. If it were necessary for us to determine this question, we think the evidence in the case indicates that the stream and not the district was intended, but it is not the province of this court to correct a mere matter of survey like that. If made in good faith and unchallenged as this has been for over fifteen years, whatever doubts may exist as to its correctness must be resolved in favor of the title as patented.

We see no error in the decree, and it is

*Affirmed.*

MR. JUSTICE FIELD takes no part in this decision.