## DE GUYER et al. v. BANNING.[*]

### No. 13,240; December 12, 1890.

25 Pac. 252.

**Mexican Grants—Description—Confirmation—Conflicting Patents.**—In ejectment, plaintiffs claimed under a Mexican grant that had been confirmed by the federal district court in 1857, and had been patented to plaintiffs by the United States in 1858, in accordance with the decree of confirmation which described the land by specified boundaries, giving lines and monuments. The survey made by the surveyor general in carrying out the decree of confirmation conformed to the exterior boundaries, as described in the decree, which mentioned no reservation within the limits of these exterior boundaries. There was a clause in the certificate of survey which read: "Excepting, reserving, and excluding from the tract, as thus surveyed, that portion thereof covered by the navigable waters of the inner bay of San Pedro, and which are included within the following described lines." The land in controversy was an island lying within these lines. This island, together with other land, lying within the inner survey, was patented to defendant by the United States in 1881. Held, that the Mexican grant, as confirmed and patented by the United States to plaintiff, included the whole space lying within its exterior boundaries, and that defendant had acquired no title under his patent.

APPEAL from Superior Court, Los Angeles County; A. W. Hutton, Judge.

Houghton, Silent & Campbell and J. S. Chapman for appellants; Bicknell & White and Smith, Winder & Smith for respondents; J. E. Foulds, amicus curiae.

FOX, J.—This is an action of ejectment for the recovery of the possession of a tract of land, comprising eighteen and eighty-eight hundredths acres, commonly known as "Mormon Island," situate in the inner bay of San Pedro, in the county of Los Angeles. Defendant had judgment, from which, and

[*]For subsequent opinion in bank, see 91 Cal. 400, 27 Pac. 761.

an order denying a motion for a new trial, plaintiffs appeal. Plaintiffs claim under a Mexican grant, alleged, in the petition for confirmation thereof introduced and received in evidence, to have been made early in the present century, under which it is claimed that juridical possession was given in 1817, and that the same was repeatedly acknowledged by the Spanish and Mexican governments, and particularly so by a decree of the governor of the province of California, dated December 31, 1822; of which grant, confirmation was made by the district court of the United States, February 10, 1857, and patent thereon issued December 18, 1858. Defendant claims under a patent issued by the government of the United States, as upon a sale of the property as government land, describing the same as lot No. 1 of section 8, in township 5 south, range 13 west, San Bernardino meridian, in California, dated December 30, 1881. In addition to pleading his title, the defendant pleaded the statute of limitations, but upon that plea the court found against the defendant. The only question, therefore, to be determined upon this appeal, is whether or not the title passed by the Mexican or Spanish grant as the same was finally confirmed and patented by the government of the United States. The grant is of the Rancho San Pedro, made to Christobal Dominguez. The decree of confirmation is for eight and a half leagues, a little more or less, of which specific boundaries are given in the decree, giving lines and named monuments, some of which are natural and some artificial, and extending around all sides of the grant. One of these lines, as specifically described in the decree, runs directly across the outer or western border of "the inner bay of San Pedro" to La Coleta, and includes said inner bay within the exterior boundaries of the grant. As described in the decree, no exception within the exterior lines there given is made, but everything passes by the grant, which lies within those exterior boundaries. It is proved and conceded that the exterior boundaries, as described in the survey, made by the surveyor general, and recited in the patent, are identical with those given in the decree itself. But after completing the survey of the exterior boundaries, as the same are described in the decree, the surveyor adds this paragraph: "Excepting, reserving, and excluding from the tract, as thus surveyed, that portion thereof covered by the navigable waters of the inner

bay of San Pedro, and which are included within the follow-
ing described lines, to wit ''—and then follows with the
courses and distances of the survey of such inner bay, and
including therein eleven hundred and fifty-hundredths acres.
What was the purpose, and what was the legal effect, of
this paragraph in the certificate of survey, and the subse-
quent field-notes of the survey in this paragraph referred to?
An understanding of the character of the ''inner bay of San
Pedro'' may help to solve that problem, if it is one capable of
solution.   According to the map attached to the record it is
a body of water jutting into the main body of the land, toward
the east, from the principal or main bay of San Pedro, cover-
ing in its exterior limits eleven hundred and fifty-hundredths
acres.   The body of the mainland of the grant surrounds it
on the north, south and east.   It was claimed by counsel at
the argument, but we do not see that the fact appears in the
record, that it is inaccessible to sea-going ships, but that at
times of high water it is navigable with small craft.   Man-
ifestly, and we say this more from what seemed to be con-
ceded at the argument than from any direct evidence in the
record, it is a tract of water below ordinary high-water mark,
but not a portion of the deep sea, or into which deep sea going
vessels can be taken.   Within it Mormon island is situated.
At high water this island consists of a pile of rocks, covering
not much more than an acre, above the surface of the water,
but at medium low water it is an island of considerable extent,
and at extreme low water, according to the testimony of the
defendant himself, it is not an island at all, but is accessible,
dry shod, from the mainland.

The exception and reservation, if it be one in law, is ''that
portion thereof covered by the navigable waters of the inner
bay,'' etc.   The very language of this exception would cer-
tainly exclude from the exception the island, which cannot be,
in the nature of things, ''covered by the navigable waters,''
and this exclusion would extend to the island as shown at
ordinary low-water mark.   This conclusion must be inevitable,
and not open to debate, if we are to be governed by these
words of exception and reservation.   If, on the other hand,
courses, distances and quantity are to govern in the con-
struction of this clause, and the determination of what is cov-
ered by the reservation, then the island is necessarily a part of,

and is not excluded from, the reservation. But the very language of the exception forbids such a construction. There is no word in the entire certificate of the surveyor to show that all within the survey of the inner bay is reserved, but only that part thereof which is covered by the navigable waters. This conclusion would determine this case were it not for the fact that the eighteen and eighty-eight hundredths acres patented to defendant, and of which he admits himself in possession, include much more than the island, as the same appears at even ordinary low tide. Because of this fact, it becomes necessary to go further, and inquire whether the United States had any property right within that inner bay, at the date of the patent made by the government to defendant, which its officers had the power to convey.

Returning again to the Mexican grant, of which it is conceded that juridical possession was given in 1817, and final confirmation made by the constituted authorities of the Mexican government in 1822, we find that the judicial department of our own government, in 1857, finally adjudged, determined, and decreed that this inner bay, was included within, and was a part of, said Mexican grant, and in and by said decree gave the entire boundaries, showing that it was so included. This was a final adjudication that the lands within the inner bay never were, never became, and never could become, unless by subsequent purchase, the property of the United States. It had passed into private ownership before the conquest, and this government was, by its treaty, bound to protect the title thereof in the Mexican grantee, or his successors in interest. By its decree of confirmation, the government did so protect this title, and determined that it had no interest in the lands. There was nothing in the decree to indicate or intimate that the inner bay, or any part thereof within the lines of the boundaries there given, was excepted or reserved from the grant, or to authorize the surveyor to either survey or make such an exception or reservation. The grant was one by boundaries, and not by quantity, and was complete within itself.

Turning to the patent, which, as before stated, is dated December 18, 1858, we find that it commences with and consists of recitals of the presentation of the grant for confirmation, and of all the proceedings down to and including the decree

of confirmation, and the dismissal of appeal therefrom, followed by a recital of the certificate of survey and plat made by the surveyor general, and then, and not till then, proceeds with the granting clause, as follows: "Now know ye that the United States of America, in consideration of the premises, and pursuant to the provisions of the act of Congress aforesaid of March 3, 1851, have given and granted, and by these presents do give and grant, unto the said . . . . and to their heirs, the tract of land embraced in the foregoing survey, in the respective shares," etc.   There is not in the entire granting portion of this patent, nor at any place in the entire instrument, except in the recital of the certificate of survey, a word to indicate that any exception or reservation whatever is made, either in the Mexican grant, in the decree, or in the grant or relinquishment finally made by the United States. The latter is "of the tract of land embraced in the foregoing survey." What "foregoing survey"?  The one which is complete in itself, and confessedly conforms minutely to the original grant, the juridical possession given thereunder, the monuments then established, both natural and artificial, and to the decree of final confirmation; or to that survey amended by adding thereto a complete, independent, and unauthorized survey, embracing eleven hundred and fifty-hundredths acres, lying wholly within the lines of the authorized survey, but to be taken out of the grant or relinquishment thereby made?  This reference to survey in the granting clause of the patent is not free from ambiguity, but, when construed in the light of the decree of confirmation, under authority of which the patent was made, and of the law as to what the government then possessed and could grant in the premises, it must be held that the words "foregoing survey" refer to the first of the complete surveys given in the recital —the one which confessedly conforms to the original Mexican grant, and the decree of confirmation thereof; and that the second survey recited therein, descriptive of a reservation attempted to be made by the surveyor, but for which there was no warrant in law or in the decree, is surplusage, and of no effect.   The patent was, in effect, but the execution of the decree of confirmation: United States v. Minor, 114 U. S. 242, 29 L. Ed. 110, 5 Sup. Ct. Rep. 836.   The officers of the government had no power to execute the decree in part, and by the same act, or

any other, to withhold execution of the balance, or make reservation of a part of that which had been adjudged to be already the property of the claimants. Nor is there anything in the language of the patent which necessarily leads to the conclusion that the President, in executing this patent, attempted to make any such reservation, or do less than execute the decree as a whole. The act of the surveyor in making this second survey, and describing it as of an exception or reservation, was without authority, not binding upon his superiors or the government. The presumption is that the officers whose duty it was to prepare and execute the patent did not consider themselves bound by it, nor attempt to act upon it, and there is no language employed by them in the patent which necessarily overrides this presumption. "When a decree gives the boundaries of a tract to which the claim is confirmed with precision (as was done in this case), it is conclusive not only on the question of title, but also as to the boundaries which it specifies" (United States v. Hancock, 133 U. S. 196, 33 L. Ed. 601, 10 Sup. Ct. Rep. 264) ; and it was the duty of the surveyor, in making survey of the claim finally confirmed, "to follow the decree of confirmation as closely as practicable" (Id.; also Act Cong. July 1, 1864; 13 Stat. 334). This statute, it is true, was passed after this survey, but it established no new law —was merely declaratory of what always was the duty of ministerial officers in executing the decrees of court. In this case it was practicable to, and he did, follow the decree of confirmation minutely and exactly, and made a complete and perfect survey according to the same. That which he did afterward in the way of making addenda to his survey was in excess of his authority, and void. That the court had authority to fix and determine these boundaries definitely in its decree was settled in the Fossat Case, 2 Wall. (U. S.) 710, 17 L. Ed. 739 , and United States v. Fossatt, 21 How. (U. S.) 447, 16 L. Ed. 186, and that when so fixed they are conclusive is affirmed in United States v. Hancock, supra, probably the very last case decided by that court of last resort upon such a question. It was also so held by this court in its last decision upon this question: Association v. Knight, 85 Cal. 448, 23 Pac. 267, 24 Pac. 823 (filed September 4, 1890). And it was long since established by the supreme court of the United States, and has been steadily followed in

this court, that when a specific tract of land is so confirmed according to ascertained boundaries, fixed by the decree, the confirmee takes title, upon which he may maintain action in ejectment: Stanford v. Taylor, 18 How. (U. S.) 412, 15 L. Ed. 453; Natoma Water & Mining Co. v. Clarkin, 14 Cal. 551; Soto v. Kroder, 19 Cal. 95. In such a case the patent from the United States is evidence only of pre-existing title: Waterman v. Smith, 13 Cal. 418. ''Segregation was made by the decree'': Mining Co. v. Clarkin, supra. Both affirmed in Mahoney v. Van Winkle, 33 Cal. 456. That when the boundaries are fixed by the decree the survey must conform thereto was also held by this court in Hale v. Akers, 69 Cal. 167, 10 Pac. 385. ''The survey is not an independent act, but is an act performed under the decree, and preparatory to its [the decree] being carried into effect by a patent'' (More v. Massini, 37 Cal. 436), and which patent is but the execution of the decree (United States v. Minor, supra).

But it is claimed on the part of respondent that, notwithstanding the authorities cited, and the principles therein established, the reservation attempted to be made by the surveyor general and the survey thereof was correct and lawful, for the reason, as he claims, that no title passed by the Mexican grant to any lands within the exterior boundaries of the grant, except such as were situate above ordinary high-water mark of the seashore. In the recent case of Association v. Knight, supra, we held that the pueblo did not take and hold, under the laws of Mexico, and under those laws could not acquire title to, lands situate below ordinary high-water mark of the seashore, and cited authorities to show that such was the Mexican law, and also the decree of confirmation in that case to show that by such decree, the boundary of the pueblo, at the point under consideration, was fixed by and at high-water mark, and so found and established by the decree. But this is not a parallel case. Here there is no question of what are or can be the rights of a pueblo under the Mexican or any other law. There is no pueblo at this point, and neither party claims under one, or under the laws relating to pueblos. One is claiming under a Mexican grant, the other under the United States, direct. In that case it was conceded as having been long since established by the decisions of both state and federal courts that the Mexican government could, and some-

times did, make private grants of lands extending below the ordinary high-water mark of the seashore. This was so held in Teschemacher v. Thompson, 18 Cal. 11, 79 Am. Dec. 151, and in Ward v. Mulford, 32 Cal. 365, and the grants there referred to, like the present one, were confirmed, patented, and respected by the government and the courts. But even if this contention of the respondent that nothing passed by the Mexican grant or the patent issued in execution of the decree of confirmation thereof, lying below ordinary high-water mark, be true, it still follows that so much of the judgment appealed from in this case as adjudges and decrees that the defendant is the owner and entitled to the possession of the tract of land described in said judgment, to wit, the eighteen and eighty-eight hundredths acres described in defendant's answer, and in the patent to him, is erroneous; for, according to his own testimony, which is uncontradicted, more than 17/18 of that tract lies below ordinary high-water mark, and is, therefore, land which, if it was not granted by the Mexican government, but remained a part of the public domain, became, on the ninth day of September, 1850, the property of the state of California; and the government of the United States, or its officers, had no power to make a grant thereof, or give title thereto, at the date of defendant's patent. Defendant makes no other claim to the property, except that based upon his patent from the United States, and his possession thereunder. If the island was not included in the grant under which plaintiff claims, defendant's title to that might be good, but even then it could not be good to the land below ordinary high-water mark. In our judgment, however, the title, not only to the island, but to the whole of said inner bay within the exterior lines of the Mexican grant, as described in the decree of confirmation, and in the survey of exterior boundaries, passed to the claimants under said grant, and is vested in the plaintiffs.

Judgment and order reversed.

We concur: Sharpstein, J.; Paterson, J.

I dissent: Beatty, C. J.

THORNTON, J.—I concur in reversing the judgment and order herein, but for other reasons than those stated in the

opinion of Justice Fox. I am of opinion that the decree of confirmation of the Rancho San Pedro includes what is called the "Inner Bay of San Pedro." The patent, however, contains a reservation from grant, which reservation is confined to and embraces only that portion of the inner bay above mentioned which is covered by the navigable waters of the bay. It appears from the testimony that Mormon island is not so covered. It is not so covered by the waters of the bay at ordinary high tide. I am of opinion that plaintiff is entitled to recover the island, and such other portion of the tract of land sued for, described in the complaint as containing eighteen and eighty-eight hundredths acres, as is not covered by the navigable waters of the inner bay aforesaid. The judgment and order should be reversed and the cause remanded, that the limits of such portion may be determined by the court below, and, when so determined, judgment should be rendered for it in favor of the plaintiffs.

McFARLAND, J.—I dissent. This is a pure action of ejectment. Plaintiff's asserted title to the demanded premises rests upon a patent of the United States issued for a Mexican grant under the act of Congress of March 3, 1851. By the thirteenth section of that act it is provided that after a claim under a Mexican grant shall have been confirmed, "a patent shall issue to the claimant upon his presenting to the general land office an authentic certificate of such confirmation, and a plat or survey of the said land duly certified and approved by the surveyor general of California, whose duty it shall be to cause all private claims which shall be finally confirmed to be accurately surveyed, and to furnish plats of the same." In the case at bar, plaintiffs claim title under a patent for a tract of land known by the name of "San Pedro." The patent recites a plat and survey made under said thirteenth section of said act of March 3, 1851, and contains full copies of such survey and plat; and it then conveys to the grantees "the tract of land embraced and described in the foregoing survey." There is no other description of the land granted. Now, "the foregoing survey" does not include the land sued for in this action; indeed, such land is expressly excluded, and that certainly seems to me to end the case. How can a plaintiff in ejectment recover land which

is not included in the title deeds on which he relies? I am clearly of the opinion that the judgment and order should be affirmed.